IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Britton C. Brown, et al.,                                  Case No. 3:06 CV 2125

                              Plaintiffs,                  MEMORANDUM OPINION
                                                           AND ORDER
                 -vs-
                                                           JUDGE JACK ZOUHARY
Owens Corning Investment Review
  Committee, et al.,

                              Defendants.


**PROCEDURAL BACKGROUND**

Plaintiffs bring this putative class action under the federal Employee Retirement Income

Security Act (ERISA), 29 U.S.C. § 1104(a)(1)(A) & (B).[1]  The Amended Complaint alleges three

counts arising from Defendants' alleged breaches of fiduciary duties in the management of Plaintiffs'

retirement accounts.  Defendants are the Owens Corning Savings Plan and Owens Corning Saving

and Security Plan (collectively, "the Plans"); Fidelity Management Trust Company ("Fidelity"); five

named individuals who served on the Investment Review Committee ("IRC"), which was the Named

---

[1] "(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
(A) for the exclusive purpose of:
(I) providing benefits to participants and their beneficiaries; and
(ii) defraying reasonable expenses of administering the plan;
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

Fiduciary for the Plans; a named Plan Administrator at Owens Corning ("OC"); and John Does Nos. 1 through 25, individuals or entities who served on the IRC or otherwise performed discretionary administrative functions with respect to the Plans during the relevant time period.

The named Plaintiffs, Britton Brown, Sandra Brown and Carol Lindhuber, are former employees of OC and participated in the Plans.  The Plans offered participants various investment options, one of which included investing in an OC Company Stock Fund consisting primarily of OC common stock (Am. Complaint ¶ 24).  OC also contributed matching funds to employee Plans calculated as a percentage of salary and made additional discretionary profit sharing contributions of OC stock at various times.  Plaintiffs allege Defendants breached their fiduciary duty by allowing new or continuing investment in OC stock in the Plans after these investments became imprudent.

This matter is before the Court on Defendants' Motions to Dismiss.  The OC Defendants filed a Motion to Dismiss (Doc. No. 32), which Plaintiffs opposed (Doc. No. 37).  Fidelity also filed a Motion to Dismiss (Doc. No. 34), which was opposed (Doc. No. 36).  The Court converted the OC Defendants' motion to a Summary Judgement motion on the limited issue of the statute of limitations under ERISA and permitted discovery on this issue (Doc. No. 41).  The parties filed supplemental briefs and responses (Doc. Nos. 55-56, 66-67), and the Court conducted oral argument on the issue (Doc. No. 73).  Defendant Fidelity submitted supplemental authority after oral argument (Doc. No. 74) and Plaintiffs responded (Doc. No. 75).

## FACTUAL BACKGROUND

From 1996-2000, OC paid over $2.4 billion in resolving asbestos claims.  Plaintiffs allege OC intended to manage its potential asbestos liability through class action lawsuits.  In 1999, the U.S. Supreme Court held that asbestos defendants could not cap their liability by forcing claimants to seek

2

compensation from a limited fund.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999).  Plaintiffs note many asbestos defendants filed for Chapter 11 under the Bankruptcy Code to establish trusts that would channel future asbestos liability.  OC, however, continued to attempt to manage its liability through a National Settlement Program that sought to coordinate claims resolution with the various law firms representing claimants.  Despite this effort, OC filed for bankruptcy on October 5, 2000.

During this time, the IRC served as a fiduciary for these Plans and was responsible for prudent management of the investments in the Plans.  Defendant Fidelity administered the Plans under a Master Trust Agreement (Doc. 34-15) that granted Fidelity limited powers.  In 1999, 100 percent of the OC stock, in the form of matching contributions, and 50 percent of profit sharing contributions were "locked up" and could not be redistributed to individual participants until the participant was terminated or reached age 65, whichever came earlier. Although a policy relaxing these restrictions was set to be implemented beginning January 1, 2000, and expected to be completed by January 1, 2002, this policy was delayed because, by 1999, Owens Corning's asbestos liability problems threatened the company's finances.  As a result, Employee Contributions in the form of company stock remained "locked up" until September 29, 2000, a few days before bankruptcy filing.

Plaintiffs allege the Plans, the IRC and the Plan Administrator (OC Defendants) breached their fiduciary duties of prudence and loyalty to participants in the Owens Corning Savings Plan and the Owens Corning Savings and Security Plan by "causing or allowing the Plans to invest tens of millions of dollars in Owens Corning stock . . . when they knew or should have known that OC Stock was an imprudent investment for retirement plan savings" (Opp. to MSJ, Doc. No. 37 at p. 1).  Plaintiffs set forth this claim in Count One of the Amended Complaint.  In Count Two, Plaintiffs also claim the OC

3

Defendants enabled their co-fiduciaries to breach their duties to Plaintiffs and are therefore liable under ERISA § 405(a)(2).[2]  In Count Three, Plaintiffs allege Defendant Fidelity breached its fiduciary duties under ERISA by failing to timely  pursue claims on behalf of the Plans against OC in its bankruptcy.

## 1.      OC Defendants' Motion for Summary Judgment

### Summary Judgment Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Civil Rule 56(c).  The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim.  *Id.* at 323-25.  Once the movant meets this

---

[2]

"Circumstances giving rise to liability

In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
 . . . .
(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

4

burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* Federal Civil Rule 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  Ultimately, this Court must determine "whether [the evidence] is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

### Statute of Limitations Defense

The OC Defendants argue Plaintiffs have not timely filed their Complaint.  ERISA provides a six-year statute of limitations for breach of fiduciary duty, with the caveat that actions must be commenced "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation."  29 U.S.C. § 1113.[3]  This section establishes six years as the default, but it is

---

[3]

"No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--
(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation."

shortened to three years when the plaintiff gains sufficient knowledge.  Defendants argue Plaintiffs had actual knowledge of the facts constituting the breach more than three years prior to the commencement of this lawsuit.

The Court undertakes a two-part inquiry: (1) when did the breach occur; and (2) when did the plaintiff have actual knowledge of the breach.  *See Midgley v. Rayrock Mines*, 374 F. Supp. 2d 1039, 1043 (D. N.M. 2005).  A plaintiff has "actual knowledge of the breach or violation" when he or she has "knowledge of the facts or transactions that constitute the alleged violation."  *Wright v. Heyne*, 349 F.3d 321, 330 (6th Cir. 2003).  The defendant does not need to prove that the plaintiff had "actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute."  *Id.*  The inquiry, rather, is whether the plaintiff knew of the facts that constitute the claim, not whether he or she knew of a legal claim.  The relevant facts may include "experts of opinions, knowledge of the transaction's harmful consequences, or even actual harm."  *Id.* at 328 (quoting *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177 (3d Cir. 1992)).  Although "[t]he line between actual and constructive knowledge is not a bright and readily distinguishable one . . . somewhere between 'every last detail' and 'something was awry' lies the requisite knowledge."  *Id.* at 329 (quoting *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1086 (7th Cir. 1992)).  The Court must rely on its "situation sense" in making the determination.  *Id.*

The parties do not dispute the following basic facts: (1) the named Plaintiffs all actually knew of the bankruptcy filing of October 5, 2000 at some time greater than three years before this lawsuit was filed on September 1, 2006; and (2) the named Plaintiffs all actually knew that the OC stock in the Plans had not been liquidated at some time greater than three years before this lawsuit was filed.

6

At oral argument, Plaintiffs stipulated they knew OC was "going bankrupt" (Tr. 19) and that OC stock was "going down" (Tr. 23).

The Record also establishes what each named Plaintiffs knew at the relevant times.

**Britton Brown**

At some time greater than three years before the filing of this lawsuit, Britton Brown believed OC stock was a "speculative investment" after the bankruptcy filing in 2000 (B. Brown Dep. at p. 62). Brown also knew OC stock remained in his account as of October 2000 (B. Brown Dep. at pp. 52, 54). Defendants have not established that Brown was aware of the Investment Review Committee, its role in managing the OC stock funds or the existence of any fiduciary.

**Sandra Brown**

Likewise, Sandra Brown believed OC stock was "risky" after the bankruptcy (S. Brown Dep. at p. 57) and knew she was still invested in OC stock as of July 2002 (S. Brown Dep. at pp. 58-59). There is no Record evidence that she knew of the Investment Review Committee, its role or the existence of any fiduciary.

**Carol Lindhuber**

Lindhuber believed OC stock was "depressed" after the bankruptcy (Lindhuber Dep. at p. 28) and voluntarily sold all OC stock in her Plan account on September 29, 2000 (Lindhuber Dep. at p. 43). She acknowledged OC did not liquidate the stock fund. Lindhuber wrote to a company executive in December 2000 that "it was the company that mandated putting the match in the OC stock. It was not my investment decision . . . . [I]t's on the company's head" (Def. Ex. L). Lindhuber also submitted a claim in OC's bankruptcy proceeding in 2002 for "breach of fiduciary duty:

diminished value of my Owens Corning 401(k) account."[4]  Although the Record does not establish that she understood the meaning of the phrase "breach of fiduciary duty" nor that she knew who held such a duty, it does establish she believed some entity associated with OC was responsible for the losses in the OC stock fund.

In summary, these undisputed facts establish that each named Plaintiff believed the stock was an unsound investment at some time greater than three years before the lawsuit was filed, and knew that OC had not acted to remove OC stock from employee accounts.  Plaintiffs argue that additional knowledge was necessary to invoke the three-year statute of limitations.  They present two reasons for applying the six-year period: (1) other courts have required actual knowledge of the existence and role of the fiduciary; and (2) their claim also includes allegations of failing to protect the company's interests in bankruptcy, which suggests Defendants would need to prove Plaintiffs knew of this failure as well.

The Court must first determine when the breach occurred.  The Complaint (¶ 89) alleges OC Defendants breached their fiduciary duty by: (1) continuing to offer OC stock as an investment option between July 1, 1999 and October 5, 2000; (2) continuing to invest employer contributions in OC stock when they should have known it was not a prudent investment; (3) restricting participants from transferring their investment in OC stock to other options after July 1, 1999; (4) failing to conduct an adequate fiduciary review to determine whether OC stock was a prudent investment; (5) failing to liquidate the OC stock held in the Plans; and (6) failing to protect participant investments in bankruptcy.  These allegations provide the contours for the cause of action for breach of fiduciary

---

[4]

This claim was expunged along with others because Lindhuber did not oppose OC's Motion to Dismiss the claim.  See Doc. No. 34-2, Ex. 7-8.

duty.  Under these allegations, the alleged breaches of fiduciary duty took place at the latest around the time of the bankruptcy filing on October 5, 2000.  Plaintiffs filed their Complaint in this case on September 1, 2006, more than three years later but within six years.

Next, this Court must use its "situation sense," as *Wright* advised, in determining whether Plaintiffs' knowledge triggered the statute.  Each party offers analogous cases.

Two cases deciding the issue on a motion to dismiss specifically relied on the procedural posture as an important, even critical, basis for the outcome.  *Sherrill v. Federal-Mogul Corp*, 413 F. Supp. 2d 842 (E.D. Mich. 2006) (denying motion to dismiss because pleadings did not establish actual knowledge); *In re Gen. Motors ERISA Litig.*, No. 05-71085, 2006 WL 897444 (E.D. Mich. April 6, 2006) (relying on lack of developed record and inability to infer knowledge based on public filings alone in denying motion to dismiss).  Another case, *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078 (7th Cir. 1992), found some of the claims were not time-barred, but did so because the complaint was filed within three years of particular events giving rise to a claim.  *Id.* at 1087-88.  In other cases, the factual scenarios do not provide a strong analogy because plaintiff's knowledge was based on more straightforward facts than in the instant case.  *Wright*, 349 F.3d 321 (plaintiffs had requisite knowledge because they had personal dealings with the fiduciaries and were personally informed of the specific tortious conduct); *Tassinare v. Am. Nat'l Ins. Co.*, 32 F.3d 220 (6th Cir. 1994) (claim arose from underpayment to matching fund of which plaintiff was aware); *Million v. Trs. of Cent. States*, 50 F. App'x 196 (6th Cir. 2002) (plaintiff knew of amendment to plan regarding self-contribution triggering cause of action); *Bishop v. Lucent Technologies*, No. C2-05-CV-00003, 2007 WL 838945 (S.D. Ohio March 15, 2007) (plaintiffs learned company was offering a retirement incentive package shortly after they retired in reliance on statements from company).

9

Plaintiffs argue persuasively that this case is similar to *Kling v. Fidelity Mgmt. Trust Co.*, 323 F. Supp. 2d 132 (D. Mass. 2004), where, on a motion to dismiss, the court applied the six-year statute of limitations even though the plaintiff knew within three years that the defendant had engaged in accounting irregularities, filed for bankruptcy and delisted its stock.  The court concluded that Kling did not know what the fiduciaries had done or failed to do, and accordingly found Kling did not have actual knowledge of the material facts underlying their ERISA claim.  *Id.* at 138.  In the instant case, Plaintiffs knew of the bankruptcy filing and instability of OC stock, but claim they did not know the specifics of what the IRC did or did not do.  At oral argument, Plaintiffs similarly assert they needed to know the existence and role played by the fiduciary (Tr. 11).  However, the Court believes it is not necessary to know exact names because Plaintiffs can, as they did in this case, identify the corporate defendant and use "John Does" to prepare their legal action and meet the filing deadline.

As in the instant case, the plaintiff in *Kling* knew their employers faced financial difficulty and bankruptcy.  An affidavit also showed plaintiff Kling knew his union was "investigating potential ERISA claims."  *Id.* at 138.  While plaintiff knew that "something was awry," this is insufficient to trigger the three-year statute of limitations.  *Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir. 1987) (plaintiff Secretary of Labor lacked "actual knowledge" because it did not know defendants' involvement in the transaction); *see also Useden v. Acker*, 734 F. Supp. 978, 980 (S.D. Fl. 1989) ("[T]he court cannot make the leap of faith necessary to conclude that [the plainitff] had actual knowledge of [the plan fiduciary's] involvement in the ERISA violations.")

Defendants urge this Court instead to follow *Canale v. Yegen*, 789 F. Supp. 147 (D.N.J. 1992). In that case, the court reviewed a claim for breach of the fiduciary duty of "prudent diversification." The plaintiff claimed his employer breached this duty by maintaining investment in a particular stock

10

held in plaintiff's stock ownership plan account after that company experienced financial difficulty. The plaintiff was aware the company was "essentially insolvent" and that it had failed to diversify its investment.  The court found these facts comprised the cause of action and accordingly held the three-year statute of limitations was triggered.  *Id.* at 152.  *Canale* is analogous, but the plaintiff there alleged that "economic circumstances rendered the Plan's investments so risky that a prudent person familiar with such matters would act to minimize the risk of large losses by diversification, and that the Plan administrator had failed to do so."  *Id.*; *see also Metzler v. Graham*, 112 F.3d 207, 209 (5th Cir. 1997) ("To establish a violation [of the duty of prudent diversification], a plaintiff must demonstrate that the portfolio is not diversified "on its face.").  By contrast, Plaintiffs here allege several breaches of duty, which makes it more difficult to determine when Plaintiffs knew the underlying facts of their claims.

The Court, on the basis of this Record, finds Defendants do not demonstrate that Plaintiffs had knowledge greater than an understanding that  "something was awry."  It is unclear when Plaintiffs learned of the existence and role of the fiduciaries, or whether any documents were sent to Plaintiffs that would have told them what the fiduciaries did or failed to do to adequately monitor the OC stock investment and protect Plaintiffs' interests.   At oral argument, Defendants suggested the Summary Plan Description for the Plans explained the role of the fiduciaries, but then admitted there is no Record evidence those documents were sent to or received by Plaintiffs (Tr. 35-38).  Defendants point to no Record evidence making clear that Plaintiffs knew about the existence, function and specific actions or omissions of the fiduciaries during the relevant period.

The Court finds a disputed question of material fact regarding whether Plaintiffs had actual knowledge under the statute and therefore whether the three-year statute of limitations applies.  *See*

*Useden*, 734 F. Supp. at 980 (factual issues precluded summary judgment on appropriate statute of limitations where plaintiff had some knowledge of the transactions but not of the involvement of the defendants).  The Court cannot make the "leap of faith" to grant the OC Defendants' Motion for Summary Judgment.

### 2. Fidelity's Motion to Dismiss

Plaintiffs allege in Count Three that Defendant Fidelity breached its fiduciary duty to the Plans by failing to file a timely claim in OC's bankruptcy (Compl. ¶ 99).  Defendant Fidelity has moved to dismiss this claim, relying on two distinct defenses: (1) Fidelity was a "directed trustee" and thus not liable for breach of fiduciary duties; and (2) Plaintiffs suffered no concrete injury from Fidelity's failure to file a bankruptcy claim which would have been futile.

### Motion to Dismiss Standard of Review

An action may be dismissed if the complaint fails to state a claim upon which relief can be granted.  Federal Civil Rule 12(b)(6).  The moving party has the burden of proving that no claim exists. Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions or legal conclusions. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)).  All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party.  2 MOORE'S FEDERAL PRACTICE, § 12.34[1][b] (Matthew Bender 3d ed.2003). The Court need not, however, accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987). To survive a motion to dismiss, the complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, ____ U.S. _____, 127 S.Ct. 1955, 1974 (2007).

12

### A.       Directed Trustee Defense

Defendant Fidelity's Motion to Dismiss rests on the Court's interpretation of the Master Trust Agreement which governs the administration of the Plans.  Fidelity argues it acted as a "directed trustee" regarding the investment of OC stock in Plaintiffs' 401(k) accounts and therefore was not a fiduciary under ERISA.  29 U.S.C. § 1103(a) ("[T]he trustee or trustees shall have exclusive authority and discretion to manage and control the assets of the plan, except to the extent that--(1) the plan expressly provides that the trustee or trustees are subject to the direction of a named fiduciary who is not a trustee, in which case the trustees shall be subject to proper directions of such fiduciary which are made in accordance with the terms of the plan and which are not contrary to this chapter.").  In short, a directed trustee is an entity "subject to the direction of a named fiduciary," which is also defined under ERISA.  29 U.S.C. § 1102(a)(2) ( "[A] fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly").  Fidelity argues it was a directed trustee acting subject to the direction of an OC entity that qualifies as a named fiduciary and thus cannot be held liable for ordinary breach of fiduciary duty.

Plaintiffs argue Fidelity was not a directed trustee, but instead a discretionary trustee under § 5(h)(vii) of the Master Trust Agreement, and therefore was subject to liability for breach of fiduciary duty for the purpose of representing the Plans in litigation.  *See* 29 U.S.C. § 1002(21)(A) ("[A] person is a fiduciary with respect to a plan to the extent (I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee

13

or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.").

Under ERISA, a directed trustee is not liable for breach of duty when it acts subject to proper direction. *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1102 (9th Cir. 2004) ("ERISA relieves a trustee from fiduciary obligations regarding the management and control of a plan's assets when the trustee is 'directed' by the plan's designated fiduciaries. A directed trustee is subject only to the 'proper directions' of the named fiduciary."); *In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d 1002, 1036-37 (S.D. Ohio 2006).  Fidelity argues the structure of the Plans and Master Trust indicate Fidelity was not intended to have discretion to act in many areas and that its power to bring claims on behalf of the Plans was essentially procedural.  Fidelity also argues that the Sponsor was a discretionary fiduciary that had authority to approve or reject these actions, even if it was not specifically designated as a "Named Fiduciary" in the relevant documents.  Plaintiffs claim the language of § 5(h)(vii) of the Master Trust makes Fidelity's discretion in this area clear and further argue Fidelity cannot claim directed trustee status because the function of initiating and pursuing litigation was not subject to the control of a "named fiduciary."

The parties do not dispute that Fidelity was a directed trustee for most matters and was subject to the discretion of the IRC, which is designated as the "Named Fiduciary."  For example, Fidelity had no discretion with respect to the selection of Plan options, the allocation of participant funds, and exercise of all rights related to OC stock and investment advice for Plan participants (Master Trust § 5(a) & (b)).  Fidelity was specifically limited in its duties related to OC (or "Sponsor") stock, as it was made subject to either participant or IRC direction for voting, tender and other rights (Master

14

Trust § 5(e)(v) & (v)(i)).  For all these functions, Fidelity was subject to the direction of the Named Fiduciary or the participants.

However, Fidelity was granted the following authority: "Subject to Sponsor [Owens Corning] approval, to settle, compromise, or submit to arbitration any claims, debts, or damages due to or arising from the Trust; to commence or defend suits or legal or administrative proceedings; to represent the Trust in all suits and legal and administrative hearings; and to pay all reasonable expenses arising from any such action, from the Trust if not paid by the Sponsor" (Master Trust § 5(h)(vii)).  Fidelity argues this provision does not render it a discretionary trustee because its authority to bring claims arising from the Trust, such as bankruptcy claims, remained subject to the discretion of another fiduciary.  Plaintiffs respond that the Sponsor is distinct from the Named Fiduciary and its power of "approval" does not insulate Fidelity from liability under 29 U.S.C. § 1103(a)(1) (Trustees have exclusive authority and discretion in managing and controlling plan assets except when "the plan expressly provides that the trustee . . . [is] subject to direction of a named fiduciary who is not a trustee.").

The issue then is whether the Sponsor is a "named fiduciary" under § 1103(a)(1) by virtue of its power of approval over Fidelity's actions.  If so, Fidelity is a directed trustee under the statute. Fidelity does not claim that the Sponsor was formally designated as a "Named Fiduciary" in the relevant documents but instead argues its power to "approve" Fidelity's acts with respect to litigation makes it a named fiduciary.

Fidelity relies largely on *In re Cardinal Health*, where the court held that a plan trustee, Putnam Investments, was a "directed trustee" with respect to decisions to include certain investment options.  But that case differs materially from the instant case, because the basis for the claim that

15

Putnam was a discretionary trustee was its mandate to "establish certain" investment options.  The court there determined this language did not override the clear intent to make Putnam's role in creating investment options administrative rather than discretionary.  *Id.* at 1037.  *Cardinal Health* further holds that when the "relevant language . . .  reflects the purely procedural nature of th[e] authority and makes clear that ultimate discretion resides with someone other than" the trustee, the entity is a directed trustee.

Authorities explaining when a person or entity is a "named fiduciary" under ERISA are sparse.  In most situations, the entity's status is clear because it is defined in the plan document as a named fiduciary.  Indeed, the Plan in the instant case includes "Named Fiduciary" as a defined term.  The Master Trust details the power of the Sponsor and the Named Fiduciary in separate, parallel sections.  See Master Trust Agreement § 8(a-c) (describing procedures for following directions from Named Fiduciaries and from Sponsor in separate but identical subsections).  The drafters of the Master Trust designated entities as named fiduciaries but did not include the Sponsor in this definition.  Rather, a separate, but similar, role was established which did not grant it Named Fiduciary status.

Regulatory guidance from the U.S. Department of Labor suggests a straightforward approach:

> While the better practice would be to state explicitly that the plan committee is the "named fiduciary" for purposes of the Act, clear identification of one or more persons, by name or title, combined with a statement that such person or persons have authority to control and manage the operation and administration of the plan, satisfies the "named fiduciary" requirement of section 402(a). The purpose of this requirement is to enable employees and other interested persons to ascertain who is responsible for operating the plan. The instrument in the above example, which provides that "the plan committee shall control and manage the operation and administration of the plan", and specifies, by name or position, who shall constitute the committee, fulfills this requirement.

29 C.F.R. § 2509.75-5, FR-1.  Fidelity correctly notes that plan documents need not explicitly label an entity as a named fiduciary, but is unable to point to provisions giving the Sponsor "authority to

16

control and manage the operation and administration of the plan."  The Court finds that § 11.2(g) of the plan document which gives the Benefits Review Committee (BRC) power to "employ agents, attorneys, accountants, actuaries or other persons (who may also be employed by an employer, the Investment Review Committee or the trustee), and to allocate to them such powers, rights and duties as the committee may consider necessary" does not clearly confer any power on the employer -- and by extension, on the Sponsor.  Furthermore, the provisions of the Master Trust do not clearly establish the Sponsor as having the powers of a named fiduciary and, significantly, do not "enable employees . . . to ascertain who is responsible for operating the plan."  29 C.F.R. § 2509.75-5, FR-1.

Although Fidelity's authority to bring a bankruptcy claim was subject to the Sponsor's approval, the Record does not establish that Fidelity was acting at the direction of a named fiduciary. Unlike the provision the court examined in *Cardinal Health*, the provision in this case does not make it clear that Fidelity was subject to the "ultimate discretion" of a named fiduciary.  In addition, courts addressing this issue have counseled against making this determination on a motion to dismiss. *Cardinal Health*, 424 F. Supp. 2d at 1030 ("[F]iduciary status is a fact-intensive inquiry, making the resolution of that issue inappropriate for a motion to dismiss.") (internal quotation marks omitted). The Court therefore finds Fidelity's status as a named fiduciary withstands the Motion to Dismiss.

### B.  Futility Defense

Fidelity also argues Plaintiffs lack standing to sue because they do not present a cognizable injury that is fairly traceable to the complained-of conduct.  Fidelity argues Plaintiffs suffered no loss caused by Fidelity's failure to file a claim in bankruptcy because the claim would have yielded no recovery.  In essence, Fidelity argues any claim it might have filed in the OC bankruptcy would have been futile.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 ("[T]he irreducible

17

constitutional minimum of standing" poses three requirements: (1) injury in fact which is concrete and particularized and actual or imminent; (2) causal connection between the injury and the conduct complained of; and (3) likelihood that a favorable decision by the court will redress the injury.)

As Fidelity describes in its Motion to Dismiss, Plaintiffs allege they suffered losses to the value of their 401(k) accounts because the OC Defendants allowed and maintained investment in OC stock after it became imprudent to do so.  Plaintiffs claim Fidelity breached its fiduciary duty by failing to bring a claim in bankruptcy on behalf of the plan.  Section 510(b) of the Bankruptcy Code provides for subordination of claims "for damages arising from the purchase or sale of . . . a security" issued by the debtor in bankruptcy.  11 U.S.C. § 510(b).  The issue turns on the construction of the phrase "arising from the purchase or sale of . . . a security."  Plaintiffs argue this subordination provision does not reach ERISA claims for breach of fiduciary duty, while Fidelity argues it applies with equal force to ordinary shareholder claims and ERISA claims.

A bankruptcy court recently observed that the "relating to" clause should be interpreted broadly to include subordination of claims "indirectly related to the purchase or sale of a security" *In re Enron Corp.*, 341 B.R. 141, 157 (Bank. S.D.N.Y. 2006).  Plaintiffs cite three cases which they claim demonstrate that the law on this issue is unsettled.  However, in each of these cases the courts either did not squarely address mandatory subordination under Section 510(b), or held it did apply to ERISA claims for breach of fiduciary duty.

*In re Merrimac Paper Co.*, 420 F.3d 53 (1st Cir. 2005) held that claims stemming from a note were not equitably subordinated under Section 510(c), a separate and distinct provision from mandatory subordination under Section 510(b).  The court determined that only the note-based claim was before it for review and did not disturb the lower court's holding that the ERISA claims were

18

Case: 3:06-cv-02125-JZ  Doc #: 76  Filed:  03/31/08  19 of 21.  PageID #: 2234

subordinated under Section 510(b).  *Id.* at 59.  *Merrimac* does not stand for the proposition Plaintiffs claim it does.  Furthermore, this Court is neither bound nor convinced by the Department of Labor's Amicus Brief in *Merrimac* arguing against subordination of ERISA-based claims.  *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (agency interpretation of statute produced beyond the scope of rulemaking or adjudication is "entitled to respect . . . but only to the extent that those interpretations have the power to persuade") (citation omitted) (internal quotation marks omitted).

Likewise, *In re Lenco, Inc.*, 116 B.R. 141 (Bankr. E.D. Mo. 1990) does not support Plaintiffs' argument.  The court there held that the Department of Labor's ERISA-based claim was subject to mandatory subordination under Section 510(b) even though it arose from the employee stock plan's purchase of company stock from a third party rather than an original issuance of company stock .  *Id.* at 143.  The court rejected the government's argument in favor of a narrow interpretation of Section 510(b) as "a clever but unsupportable construction by the DOL."  *Id.* at 144.

Finally, *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 717 (Bankr. S.D.N.Y.), *aff'd*, 140 B.R. 347 (S.D.N.Y. 1992) also does not support Plaintiff's position for a narrower construction of Section 510(b).  The court held the claims presented "multi-faceted issues of law and fact" which distinguished the scenario from the more straightforward stock transaction in *Lenco*. 138 B.R. at 720. In affirming the bankruptcy court's holding, the district court noted that the claims extended beyond the purchase or sale of stock into the realm of breach of employment contracts and deferred compensation.  140 B.R. at 349.  The court held the bankruptcy court did not abuse its discretion in "approving the ERISA Settlement and Plan which classified the varied mix of employee-shareholder claims as unsecured creditor claims, not common stockholder claims subject to § 510(b)."  *Id.* at 350. This holding rested on a characterization of the various claims as distinct from stockholder claims,

and therefore does not squarely address the instant case where the claims arise directly from the management of OC stock.

After oral argument, Fidelity points to the recent holding in *In re Touch Am. Holdings, Inc.*, 381 B.R. 95 (Bankr. D.Del. 2008), where the court held that the plain meaning and legislative history of Section 510(b) indicate that ERISA claims are subordinated just as ordinary shareholder claims. *Id.* at 106 (plaintiffs claimed the fiduciaries breached their duties by maintaining investment and restrictions on transfers of declining stock). First, it is immaterial whether Plaintiffs acquired the OC stock through a purchase or as a matching contribution because employees essentially exchange value -- their services -- for matching contributions that they receive as compensation. *Id.* at 104. Second, just like other OC shareholders, Plaintiffs and other OC employees "took on the risk and return expectations of shareholders" and accordingly should stand on equal footing in bankruptcy proceedings. *Id.*

The plain language of the statute states that claims related to the sale or purchase of the debtor's securities are subordinated. Plaintiffs argue, however, that a claim asserted in bankruptcy by Fidelity would not necessarily have been futile. OC might have, for example, offered to settle the claim with Fidelity on behalf of the Plans because of the relative uncertainty of the law governing subordination of such claims. Furthermore, as this question has not been definitively resolved by reviewing courts, it is possible that any subordination of these claims could be deemed improper. The Court cannot speculate what relief might have been granted had Fidelity filed a claim in bankruptcy. Nevertheless, while the Court finds any claim Fidelity could have brought on behalf of the Plans would likely have been subordinated under Section 510(b), the Court also recognizes that OC offered $2.2 million for the benefit of some of its 401(k) participants who suffered losses because of a delay

20

in processing transactions (Doc. 75, Ex. 1).  Plaintiffs may therefore be able to establish a cognizable injury because the harm they suffered -- losses in their 401(k) accounts -- is fairly traceable to the complained-of conduct -- Fidelity's failure to file a claim.  The pleadings do not demonstrate that any attempt at relief in bankruptcy would have been futile.

### CONCLUSION

For the foregoing reasons, the OC Defendants' Motion for Summary Judgment (Doc. No. 32) is denied and the Fidelity Defendant's Motion to Dismiss (Doc. No. 34) is denied as well.

IT IS SO ORDERED.

_____s/ Jack Zouhary_____
JACK ZOUHARY
U. S. DISTRICT JUDGE

March 31, 2008

21