IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Britton C. Brown, et al., | Case No. 3:06 CV 2125 |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Owens Corning Investment Review Committee, et al., | |
| Defendants. | |

### INTRODUCTION

This matter is before the Court on the Motion of Defendant Owens Corning (OC) for Reconsideration (Doc. Nos. 80-81) with Supplemental Exhibits (Doc. No. 84) and Supplemental Legal Authority (Doc. No. 108). The Motion is opposed by Plaintiffs (Doc. Nos. 85 and 109).

The Court is asked to reconsider its Memorandum Opinion and Order (Doc. No. 76) denying Defendants' (OC and Fidelity) Motion for Summary Judgment on the ground that the statute of limitations bars Plaintiffs' recovery. Here, the Court will reexamine the denial in light of the additional exhibits and recent legal authority.

### ISSUES ON RECONSIDERATION

Defendants' specific challenge to the Court's prior Order is as follows (Brief at p. 1):

The Order states that the OC Defendants had not demonstrated that plaintiffs had actual knowledge of their claims sufficient to trigger ERISA's three year statute of limitations (29 U.S.C. § 1113(2)) because it was unclear what "Plaintiffs knew about the existence, function and specific actions or omissions of the fiduciaries during the relevant period." Order at 11. The OC Defendants submit that such evidence, while not required by *Wright v. Heyne*, 349 F.3d 321 (6th Cir. 2003) and *Bishop v. Lucent Technologies, Inc.*, __ F.3d __ , 2008 WL 822265 (6th Cir. Mar. 25, 2008), is part of the uncontested evidence here.

OC maintains that at the time of its bankruptcy in October 2000, Plaintiffs had the requisite knowledge. Additional documents submitted by OC following this Court's Order show that OC advised Plaintiffs in writing in late September 2000 that the Owens Corning Stock Fund "was closed," and Plaintiffs were no longer restricted in other investment options. OC alleges these written notices informed Plaintiffs of "the existence, function and specific actions or omissions of the fiduciaries during the relevant period" because these documents reflect that Plaintiffs had knowledge that persons at OC were making decisions affecting the Plan. The standard for actual knowledge does not require that a plaintiff know all material facts necessary to understand that a breach of fiduciary duty occurred, but rather only that a plaintiff know "the facts or transactions that constitute [] the alleged violation." *Bishop v. Lucent Techs.*, 520 F.3d 516, 520-21 (6th Cir. 2008).

Plaintiffs concede that they knew OC was going bankrupt and that its stock value was dropping, but argue that the statute was not triggered because they did not know: "(1) the Investment Review Committee existed; (2) the Plan had fiduciaries; (3) fiduciaries, or anyone else, were responsible for managing the Owens Corning Stock Fund; and (4) the Owens Corning Stock Fund had been mismanaged" (Brief at p. 3). The question for this Court is whether these "deficiencies" are sufficient to avoid the three-year statute of limitations.

### RECORD ON RECONSIDERATION

This Court concedes that its earlier Order denying summary judgment was a close call. Also, subsequent to that Order, Plaintiffs filed a Second Amended Class Action Complaint where, for the first time, Plaintiffs allege they became aware of the necessary "who, when and where" at various times in 2006 and 2007 (Doc. No. 78, ¶¶ 6-10). Most recently, Plaintiffs seek leave to file a Third Amended Class Action Complaint (Doc. No. 112) to add several members of OC's Board of Directors

2

for allegedly failing to monitor the Plan's fiduciary and to add certain unnamed members of the Benefit Review Committee for allegedly failing to inform Plan participants of the identity of the members of the Investment Review Committee (IRC). Defendants argue these new allegations are barred by the ERISA six-year statute of limitations under 29 U.S.C. § 1113(1). Plaintiffs argue the statute was tolled by fraud and concealment and that the class period should now extend further back from September 1, 2000 to June 30, 1999.

With this expanded Record, including the Second Amended Complaint and the additional exhibits, the Court will next review these recent legal authorities: *Bishop v. Lucent Techs.*, 520 F.3d 516 (6th Cir. 2008); *Zirnhelt v. Mich. Consol. Gas Co.*, 526 F.3d 282 (6th Cir. 2008); and *Young v. Gen. Motors Investment Mgmt. Corp.*, 550 F. Supp. 2d 416 (S.D.N.Y. 2008).

## LEGAL STANDARD

This Circuit held in *Bishop* that once facts give rise to a reasonable inference that plaintiffs have actual knowledge of the underlying facts or transaction, it is incumbent upon plaintiffs to offer an explanation and "affirmatively allege the date when each plaintiff acquired the relevant knowledge." *Bishop*, 520 F.3d at 521. In *Bishop*, plaintiffs brought a claim for breach of fiduciary duty under ERISA, alleging they were misled into prematurely accepting early retirement. Plaintiffs retired in late 2000, relying on statements made by their employer, Lucent, that no better retirement offer would be forthcoming. Six months later, in June 2001, Lucent offered a more lucrative early retirement program. Plaintiffs filed their cause of action in January 2005. The district court dismissed the claims as time-barred by the three-year statute of limitations, finding plaintiffs had actual knowledge of the breach when the better retirement offer was made in June 2001. The Sixth Circuit affirmed the dismissal.

The complaint in *Bishop* gave rise to the reasonable inference that the plaintiffs must have known they had been wronged at the time of the June 2001 announcement. *Id.* at 520. The court held that the "incompleteness of the allegations, combined with plaintiffs' resolute and continued silence in the face of the motion to dismiss, justifies the [] inference." *Id.* at 522. In so holding, the court stressed the fact the plaintiffs had failed to indicate a date when they first acquired actual knowledge of the breach, even though plaintiffs had the opportunity to do so. *Id.* ("Plaintiffs have offered no good reason why, in the face of the motion to dismiss, they have steadfastly refused to identify when they acquired the requisite actual knowledge of defendants' violation.").

Moreover, *Bishop* emphasized that the standard for actual knowledge requires only that a plaintiff have knowledge of the facts or transactions that constituted the alleged violation. *Id.* at 520-21. The inquiry is not when plaintiffs reached the legal conclusion that a breach of fiduciary duty occurred, but rather when they knew the relevant facts or transactions. *Bishop* affirmed the dismissal of the complaint because plaintiffs failed to articulate when and how they obtained the requisite knowledge. *Id.* at 522. Despite several opportunities to amend their complaint to state specific facts in support of a timely filing, plaintiffs persisted in relying on vague allegations.

Plaintiffs in the instant case seized the opportunity to amend their Complaint, but then failed to clarify **how** they acquired actual knowledge. Instead, the Amended Complaint merely claims that the individual Plaintiffs learned -- at various times in 2006 and 2007 -- that "the Plan had fiduciaries, there was an Investment Review Committee, fiduciaries were responsible for managing the Owens Corning Stock Fund, and [Plaintiff] might have had claims under federal pension law" (Second Amended Compl., ¶ 6). The allegations are substantially similar for each named Plaintiff, with different dates alleged. (*Id., passim.*) Plaintiffs never explain what happened in 2006 and 2007 that disclosed information which was not apparent to them in October 2000 when OC filed bankruptcy.

4

*Zirnhelt* and *Young* present similar factual scenarios.  In *Zirnhelt*, the Sixth Circuit found the plaintiff had actual knowledge of the defendant's alleged fiduciary breach, triggering the three-year ERISA statute of limitations, when the plaintiff received the defendant's letter denying her benefits eligibility.  *Zirnhelt*, 526 F.3d at 289.  That distinct, singular occurrence is similar to the instant case where a few distinct factual developments during a relatively short time period underlie the alleged breach.  Specifically, Plaintiffs received OC's September 2000 letter advising them the OC Stock Fund was closed and they could avail themselves of other investment options, and OC filed for bankruptcy one month later in October 2000.  What more did Plaintiffs need to know to pursue their primary complaint that they were harmed by the drop in the OC stock price and that the Plan should have monitored and sold the OC stock before the price plummeted?

Likewise, in *Young*, the facts underlying the claimed breaches were relatively clear -- breaches of duty for failing to diversify plaintiffs' saving plans and excessive fees associated with particular investments.  The court found these facts to be "plainly disclose[d]" and "readily apparent" from plan documents and quarterly performance summaries provided to participants, thereby triggering the three-year statute of limitations for actual knowledge from the date when plaintiffs received that information.  *Young*, 550 F. Supp. 2d at 419-20.

Again, several communications sent to Plaintiffs prior to the bankruptcy address stock transfer restrictions.  CEO Hiner sent letters, and the OC Compensation Committee sent account statements that provided Plaintiffs with actual knowledge of the claimed breaches.[1]  Hiner informed salaried employees in a December 1999 email of changes to the Stock Fund, including increasing the OC

---

[1] Plaintiffs argue some of these documents should not be considered because they were not part of the Record on summary judgment.  However, pursuant to Federal Civil Rule 54(b), summary judgment rulings that do not dispose of the entire case are subject to revision any time before final judgment.  Accordingly, the Record was not closed, and it is appropriate to consider these documents.

matching contribution and phasing out transfer restrictions between the OC stock and other funds. An OC benefits hotline phone number was also provided. Hiner sent a September 2000 letter to participants stating the OC Board had approved significant changes to the Plan and provided Fidelity phone numbers to request further information. During this time, it is uncontested Plaintiffs had access to Plan documents and quarterly statements. In short, all relevant facts were laid out.

Although these communications do not identify the IRC as the named fiduciary with oversight of the Plan, they do demonstrate **someone** was exercising discretionary oversight of the Plan by altering transfer restrictions and thereby allowing greater diversification. The case law does not require that Plaintiffs be able to reach a legal conclusion that IRC was the named fiduciary. *Bishop* and *Wright v. Heyne*, 349 F.3d 321, 330 (6th Cir. 2003), make clear that such legal conclusions are not necessary prerequisites to actual knowledge. Indeed, Plaintiffs filed the instant action without the names of the members of the IRC.

Furthermore, the account statements contain messages from the "Plan Administrator" establishing that someone was making decisions regarding investments. These statements confirm that Plaintiffs knew someone was exercising discretion over the Plan in response to financial difficulties OC was facing, regardless of whether such functions may be deemed non-fiduciary plan amendments under ERISA. All this documentation refutes two of Plaintiffs' four objections (whether the Plan had a fiduciary and management of the Fund). The third objection (knowledge of IRC as a fiduciary) was neither needed nor necessary to file suit, as shown by Plaintiffs' naming of John Doe defendants. Again, Plaintiffs knew that OC representatives were managing the Plan. And the fourth objection (whether funds had been mismanaged) was also not necessary -- that is the ultimate legal conclusion specifically rejected by *Bishop* and *Wright*. Moreover, the alleged mismanagement clearly

6

centered around the decline in the stock price and bankruptcy filing, both facts known to Plaintiffs at the time.

The failure to identify new facts in the Amended Complaint undercuts Plaintiffs' arguments for an excused delay in bringing this action. Plaintiffs knew all they needed to know by October 2000. The expanded Record contains sufficient evidence that Plaintiffs knew OC had oversight of their investments and that a fiduciary made decisions regarding the OC stock. (*See, e.g.*, claim by Plaintiff Lindhuber in the OC bankruptcy action.)

### **EARLIER ORDER AND AMENDED COMPLAINT**

In its earlier Order, this Court considered several decisions in similar cases, focusing mainly on *Kling v. Fidelity Mgmt. Trust Co.*, 323 F. Supp. 2d 132 (D. Mass. 2004). In that case, the court declined to dismiss the claim as untimely where the only evidence of actual knowledge before the three-year period was the plaintiff's awareness of his employer's bankruptcy and his union's investigation of possible ERISA claims. Drawing on that example, this Court found the Record did not make clear when "Plaintiffs learned of the existence and role of the fiduciaries, or whether any documents were sent to Plaintiffs that would have told them what the fiduciaries did or failed to do to adequately monitor the OC stock investment and protect Plaintiffs' interests." (Doc. No. 76 at p. 11).

Under Count One of the Amended Complaint, which is the primary claim for breach of fiduciary duty, Plaintiffs claim Defendants: (a) caused the Plans to continue to offer OC stock after such investment became imprudent; (b) continued to invest employer contributions in that stock; (c) imposed and maintained transfer restrictions; (d) failed to conduct adequate fiduciary review; (e) failed to liquidate the OC stock; and (f) failed to protect investments during bankruptcy.

These several alleged breaches of duty all necessarily focus on the failure to sell OC stock. Plaintiffs repeatedly refer to a failure to "monitor or minimize the risk" to investors, which can only mean the fiduciary should have sold the OC stock. When pressed with what Plaintiffs meant by Defendants' failure to prudently monitor the stock, Plaintiffs' counsel could only respond with "done something more to protect plan participants" (Tr. 16). Again, this can only mean failure to sell the stock before OC filed bankruptcy. Simply put, the gravamen of this action is that the Plan continued to offer OC stock as an investment option from July 1999 to September 2000, and those facts were known to Plaintiffs irrespective of complete identification of the fiduciary and of whatever "monitoring" the fiduciary undertook.

In *Bishop*, the court stated: "When it affirmatively appears from the face of the complaint that the time for bringing the claim has passed, the plaintiff cannot 'escape the statute by saying nothing.'" *Id.* at 520 (*quoting Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir.1992)). Here, Defendants challenge the timeliness of the action and present evidence that Plaintiffs certainly knew by 2000 that someone was watching over the OC stock and their Plan, and was making decisions about when and how participants could invest in their accounts. Plaintiffs never specify what necessary facts they later learned that they did not know back in 2000. Indeed, the new allegations are merely conclusory statements that Plaintiffs did not learn of the existence and role of fiduciaries until only months before the lawsuit was filed. But Plaintiffs **did** know a fiduciary was managing the Fund.[2]

---

[2]

The Court is guided not only by *Bishop*, where the court held "plaintiffs may not simply rely on the bare assertion that they were unaware of the facts underlying their cause of action," 520 F.3d at 521, but also by the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544; 127 S. Ct. 1955 (2007). In *Twombly*, the Supreme Court held that a plaintiff cannot withstand a motion to dismiss merely by alleging facts raising a "suspicion" of a plausible legal claim. *Id.* at 1965 (*quoting* Wright & Miller). Plaintiffs are required to allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. The *Bishop* court cited *Twombly* in its review of an ERISA complaint. 520 F.3d at 519. Federal Civil Rule 56(e)(2) also requires Plaintiffs to set forth "specific facts showing a genuine issue for trial."

Although the new allegations offer more than the silence in *Bishop*, they do not identify specific facts or communications triggering actual knowledge, nor how Plaintiffs learned these facts. Indeed, the allegations largely reiterate the rather broad categories of facts the Court itself identified in its earlier Order. In identifying the **kinds** of facts that would constitute actual knowledge, the Court did not intend for these categories to substitute for specific, identifiable facts. Plaintiffs' duty is to articulate facts comprising a "plausible" claim and, in so doing, need not know the names of the individual fiduciaries. Despite repeated inquiry by this Court asking what facts Plaintiffs needed to know beyond the bankruptcy and failure to liquidate the Stock Fund, Plaintiffs never identified the specific facts or transactions they needed to learn.

Plaintiffs concede they knew of the bankruptcy, the decline in the stock price, and the failure to liquidate the OC Stock Fund well before the three-year period preceding this lawsuit, but argue they also needed to know "what the fiduciaries did to monitor the stock" (Tr. 11-12). Whether inadequate monitoring led to a delay in phasing out the OC stock and the ultimate liquidation cannot be known until discovery or depositions. The relevant issue is what additional knowledge was required in order to pursue this monitoring claim. This failure supports the Court's conclusion, in light of the additional legal authorities, the amended pleadings, and exhibits, that Plaintiffs knew all that was necessary for filing this action by the fall of 2000.

## CONCLUSION

The Court has searched and struggled to find what it is that was unknown to Plaintiffs in the fall of 2000 that would preclude the application of the three-year statute of limitations. The Court believes that reasonable minds can only conclude that sufficient facts were known to Plaintiffs by that time. Although Plaintiffs argue that only with discovery can they know if and when the Plan fiduciaries failed in their duty to monitor the OC stock, and therefore whether the stock should have

9

been sold sooner, Plaintiffs knew the necessary facts by October 2000 that formed the basis for a potential claim. This Court's "situation sense" (per *Wright*, 349 F.3d at 329) in this case is that the three-year statute of limitations is applicable, and this action is time barred.

Accordingly, Defendants' Motion for Reconsideration is granted, and this action is dismissed. In light of this ruling, Plaintiffs' Motion for Class Certification (Doc. Nos. 87-88) is moot, and Plaintiffs' Motion to Amend Complaint (Doc. No. 112) is also moot.

IT IS SO ORDERED.

                                                            s/ *Jack Zouhary*
                                                            JACK ZOUHARY
                                                            U. S. DISTRICT JUDGE

                                                            December 24, 2008